IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW LINDEWIRTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-1998 |
| | ) | |
| ST. CHARLES COUNTY AMBULANCE | ) | JURY TRIAL REQUESTED |
| DISTRICT, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARK FENTON, JIM OTTOMEYER, | ) | |
| RAYMOND BAUER, TOM KLEIN, | ) | |
| and RONALD REGULY, | ) | |
| individually and in their official capacities | ) | |
| as members of the Board of Directors, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMES COOKE, in his official capacity | ) | |
| only, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOSHUA DAVIS, JOAN PERRY, | ) | |
| KEVIN GUERRA, AND MICHAEL | ) | |
| SOMMERVILLE, in their individual | ) | |
| capacities only, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TAZ MEYER, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## PARTIES & JURISDICTION

1.      Plaintiff, Matthew Lindewirth (hereinafter "Lindewirth" or "Plaintiff"), is

an individual with his place of residence in Wentzville, Missouri in the Eastern Division of the Eastern District of Missouri.  At all times relevant herein, he was employed by the St. Charles County Ambulance District.

2.      The St. Charles County Ambulance District (hereinafter, the "District") is a political subdivision of the State of Missouri that can sue or be sued in its own name by reason of § 190.010.2 R.S.Mo.  The District is located in St. Charles County, Missouri in the Eastern Division of the Eastern District of Missouri.

3.      Defendants Mark Fenton (hereinafter "Fenton"), Jim Ottomeyer (hereinafter "Ottomeyer"), Raymond Bauer (hereinafter "Bauer"), Tom Klein (hereinafter Klein"), and Ronald Reguly (hereinafter "Reguly") are the current members of the District's Board of Directors.  They are sued in their individual and official capacities. They and Joshua Davis (hereinafter "Davis") were the members of the Board when Lindewirth was denied promotion in May 2014 as set forth in more detail below. Defendant James Cooke is also a current member of the Board but was not on the Board at the time of the acts complained of herein.  He is sued in his official capacity only.

4.      Defendants Davis, Joan Perry (hereinafter "Perry"), Kevin Guerra (hereinafter "Guerra"), and Michael Sommerville (hereinafter "Sommerville") were members of the Board of Directors at the time Lindewirth was denied promotion to the position of Transfer Supervisor in 2013 as set forth in more detail below, but are not currently members of the Board.  They are sued in the individual capacities only. Defendants Fenton and Ottomeyer were also on the Board when Lindewirth was denied a promotion in January 2013.

5.      The District's Board of Directors is the final decisionmaker on all

personnel matters to include hirings, firings, and promotions, as well as whether an employee receives a pay differential.

6. Defendant Taz Meyer (hereinafter "Meyer") was at all times relevant when Lindewirth was denied promotions the Chief Executive Officer (hereinafter "CEO"). His is also the current CEO of the District. He is sued in both his individual and official capacities. Meyer recommends promotions and other actions to the Board.

7. This action is brought pursuant to the Uniformed Services Employment and Reemployment Act of 1994 (hereinafter "USERRA"), as amended, 38 U.S.C. § 4301 *et seq.*, as well as §§ 41.730 and 105.270 R.S.Mo, 42 U.S.C. § 12101 *et seq.* and R.S.Mo. §213.010 *et seq.*, 42 U.S.C. § 1983, and the 14th Amendment to the United States Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. §1367.

8. Plaintiff requests a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

9. Venue is proper in the Eastern Division of the Eastern District of Missouri because the place where the employer maintains its place of business. 38 U.S.C. § 4323(c)(2).

## FACTS COMMON TO ALL COUNTS

10. Lindewirth was hired by the District on or about November 24, 1997 as a paramedic. He was a lead paramedic (now known as an acting supervisor) from 1999 through 2002, when his term as lead paramedic expired. He has faithfully served the District since he was first hired by it, except when on active duty with the military as set

3

forth in more detail below.

11.     Lindewirth served as a Corpsman (medic) for the U.S. Navy Reserves from February 2003 through March 2005.  He served in the Air Force Reserves and Illinois Air National Guard as a flight medic and then in-flight refueler from March 2005 through December 2009.  In December 2009, he returned to the Navy Reserves as a commissioned officer.  Lindewirth remains an officer in the Navy Reserves as of the date of the filing of this petition.

12.     Lindewirth was on active duty orders and/or deployed while working for the District for various periods of time from 2003 to present.  He has been deployed to the Middle East, Guam, Ecuador, and the Horn of Africa.  He was on extended active duty orders (assigned stateside) from August 2005 through May 2006.  From November 15, 2011 through January 14, 2013, Lindewirth was deployed to a combat zone in the Horn of Africa 11 miles from Somalia and in close proximity to Yemen.  Prior to his November 2011 deployment, he was on active duty orders state-side from April through September 30, 2011.

13.     During his deployment to the Horn of Africa, Lindewirth injured both of his arms while transporting classified information.  As set forth in more detail below, this injury required Lindewirth to undergo three (3) surgeries before the filing of this action, the first in March 2014, the second in June 2014, and the third in October 2014.

14.     Prior to the events at issue in this Complaint, the District and its leadership had a long history of discriminating and/or retaliating against Lindewirth because of his obligations to and/or performance of service in the uniformed service, more specifically the Navy Reserves and Illinois Air National Guard.  This discrimination/retaliation

included but was not necessarily limited to the acts listed in more detail below.

15.     In the fall of 2003, Lindewirth was told that his vacation time was being canceled at the direction of then CEO Bob Stewart (hereinafter "Stewart") because Lindewirth had to use his vacation time for a scheduled Navy drill.  Lindewirth told the District that making him use vacation to drill would violate USERRA.  When Lindewirth's efforts to obtain the District's voluntary compliance with USERRA proved unsuccessful, he contacted the Department of Labor (hereinafter "Department").

16.     The Department contacted Stewart and informed him that requiring Lindewirth to take vacation to drill was illegal, and if Stewart insisted upon Lindewirth doing so, charges would be filed against the District under USERRA.  When Stewart told the Department to "do what it needed to do," the Department gave Stewart 30 minutes to reconsider his decision to violate USERRA.  Later that same day, Lindewirth was notified by the Department that the District would not require him to use his vacation to drill.

17.     After this vacation issue was resolved through the District's compliance with USERRA, Stewart made it clear to Lindewirth that he was upset that Lindewirth called the Department about the District's attempt to violate USERRA.

18.     In 2003/2004 when another employee of the District, who did not challenge the District about USERRA violations, was deployed, the District paid him the difference between his military base pay and District salary.  The District also paid the full cost of this employee and his family's health insurance.

19.     At all times relevant herein, the District has had a Leave Policy relating to military and other types of leave, such as bereavement leave and jury duty.  Pursuant to

5

District policy, an employee required to serve jury duty was fully compensated for such

service.  Upon information and belief, in 2008/2009 an employee of the District served

on the grand jury intermittently for an extended period of time (eighteen (18) months)

and was paid the difference between the pay received for jury duty and his District pay.

20.     In contrast, in 2005, when Lindewirth was on extended active duty orders

with the Illinois Air National Guard, he asked the District to pay him the same salary

differential provided to the other employee of the District in 2003/2004.  This request

was denied.

21.     In June 2006 Lindewirth was informed that the District was rewriting its

military leave policy.  Because the amended policy violated USERRA, Lindewirth

attempted to discuss the noncompliant portions of the policy with Marty Carlyle

(hereinafter "Carlyle"), then a Shift Officer.  Carlyle told Lindewirth that he just needed

to "go with the flow."   Lindewirth also attempted to discuss his concerns with then CEO

Ken Koch (hereinafter "Koch") without success.

22.     When Lindewirth's efforts within the District to obtain a USERRA

complaint military leave policy proved unsuccessful, Lindewirth contacted the

Department of Defense Office of Employer Support of the Guard and Reserve

(hereinafter "ESGR").  When Koch and the Board of Directors learned that Lindewirth

had contacted the ESGR about the District's noncompliant military leave policy, they

threatened and berated Lindewirth.  Ultimately, Lindewirth was required to write a letter

of apology to Koch and the Board simply because he attempted to ensure that the

District's military leave policy complied with USERRA.

23.     After Koch made Lindewirth apologize to him and the Board for

challenging the District's noncompliant military leave policy, he made a point of contacting two other employees of the District, who were in the military at that time. Koch told those employees that "everything" was being taken away from them because Lindewirth called the ESGR, which led to arguments between Lindewirth and other employees and employees berating Lindewirth and claiming that he was "screwing everyone over."

24.     Additionally, in 2006, Lindewirth had again requested the pay differential for his 2005 extended active duty assignment that had previously been denied. Lindewirth understood that this pay differential would be approved by the Board, which even motioned to approve the differential.  However, Koch opposed Lindewirth receiving the differential and reported to the Board that Lindewirth had gone outside the District to discuss its noncompliant military leave policy with the Department (really ESGR).  The District/Board then told Lindewirth, it would not provide him the pay differential it had previously motioned to approve and had paid to other employees of the District.

25.     Similarly, in 2011 when Lindewirth began his deployment to the Horn of Africa, the District/Board refused to provide him with the pay differential paid to other employees of the District.

26.     In August 2006, Lindewirth was told that if he continued to seek the District's compliance with USERRA pursuant to its amendment of its military leave policy, the District would not give him the 120 hours of paid leave to which he is entitled each year for his military service pursuant to § 105.270 R.S.Mo.  When Lindewirth told the District it could not take this pay away because required by Missouri law, Carlyle responded that this pay was provided "out of the graciousness of our heart.  Keep it up

and see what happens."  When Lindewirth established that Missouri law required the District to make this payment each year, the District responded by requiring those in the military to exhaust all paid leave before unpaid leave would be granted.

27.     The District has required Lindewirth to notify numerous individuals when he is required to perform military service, instead of simply notifying the CEO or his immediate supervisor.  Even after Lindewirth thought he had resolved this issue in 2006, the District required Lindewirth to notify numerous individuals of his most recent orders in March 2014.

28.     In 2009, Lindewirth discovered that retirement benefits to which he was entitled while on military duty had not been paid since 2003.  While the District deposited these payments after Lindewirth reported yet another USERRA violation, it did not pay Lindewirth the gains he would have made if these benefits had been paid timely or the interest he was due because the District failed to make these payments timely on his behalf.

29.     As set forth above, Lindewirth was on active duty orders stateside from April 2011 through September 30, 2011.  In May 2011, the District notified Lindewirth that it had canceled his insurance, sick time, and vacation benefits during these orders. The cancellation of Lindewirth's vacation benefits violated USERRA because this benefit is seniority based.  When Lindewirth notified the District it had once again violated his rights under USERRA, his vacation benefits were restored, but the District's leadership once again made it clear that it was upset with Lindewirth because he was requiring the District to comply with USERRA.

30.     Additionally, when Lindewirth was on active duty orders in 2011, the

District tried to deny him his right to a station pick based upon his seniority.  Initially, the District required Lindewirth to call all employees with less seniority to obtain "permission" for his station pick.  This resulted in numerous verbal attacks upon him from less senior employees, who wanted to move up in seniority while Lindewirth was out on orders, resulting in a hostile work environment.  Ultimately, when the verbal attacks became  vicious, the District agreed to retain Lindewirth's seniority rights while on active duty orders, as required by USERRA.

31.     As set forth above, Lindewirth injured both arms while deployed in the Horn of Africa.  In December 2012/January 2013, he attempted to return to the District in a light duty assignment as required by USERRA.  The District refused to commit to providing Lindewirth more than sixty (60) days light duty and also told him that he would not be entitled to short or long term disability because his was injured in a combat zone, not while he was working for the District.  In December 2012 Meyer sent out a copy of the paramedic's job description, telling Lindewirth and others they would be required to meet all requirements found in the job description. Because Lindewirth could not run the risk of working for two months and then losing the income needed to support his family, he returned to unrestricted duty with the District when released from his military orders, despite his arm injuries.

32.     Lindewirth worked unrestricted duty, instead of the light duty to which he was entitled, even though this likely caused further damage/injury to his arms, to avoid any loss of income to his family.  He was required to sleep in braces while on duty and should have worn these braces while working but could not do this because the braces restricted his arm movements while caring for patients.

33.     On or about December 23, 2012, the District announced that the position of Transfer Supervisor would soon open.  Lindewirth applied for this promotion and participated in the promotional process with other applicants.  Ultimately, he was selected as one of three finalists for the open position.  One finalist was not seriously considered for the promotion because he had already announced that he was leaving the District.

34.     Lindewirth, unlike the candidate selected for the Transfer Supervisor promotion, met the minimal qualifications for the position when he applied for it because he had more than one year experience as a Lead Paramedic/Acting Supervisor.  The candidate selected, David Dalton (hereinafter "Dalton") did not meet this minimum qualification for the Transfer Supervisor promotion because he had not been a lead paramedic or acting supervisor for at least one year as required for the position.  Upon information and belief, Lindewirth was also more qualified for the position.

35.     Dalton never served in the military, and therefore, was never deployed, while employed by the District.  Additionally, upon information and belief, Dalton does not have a disability and/or is not perceived as disabled by the District.

36.     On January 23, 2013, Meyer informed Lindewirth that he had not been selected for promotion as the Transfer Supervisor by him and the Board.  When Lindewirth asked Meyer why he had not been selected for promotion, Meyer told him it was because he had just gotten back (from his deployment), and he needed some time to get back into the swing of things and reintegrate.  Lindewirth had been back on the road for a month and had been qualified as competent on all new medical protocols that had been implemented while he was away when Meyer made this statement.

37.     On or about May 23, 2013, during a meeting with Meyer, Lindewirth

asked what he could have done differently to have received the promotion to Transfer Supervisor.  Meyer once again responded that Lindewirth just needed to get into the swing of things and give it some time.

38.     On or about February 27, 2014, Lindewirth met with Marty Limpert (hereinafter "Limpert") (public information officer and internal affairs investigator) about being denied promotion in January 2013, as well as other issues involving the District. Limpert told Lindewirth that the District had the right to consider his absence (due to his military deployment) in making its promotion decision.

39.     Limpert also told Lindewirth that if he challenged the District's promotion decision it would be hard from him to prove a USERRA violation because he would tell Meyer to claim that he did not recall his conversations with Lindewirth, that Meyer never said what Lindewirth claimed, or that Meyer was just trying to be nice.

40.     In March 2014, Lindewirth was scheduled to undergo the first of his arm surgeries to repair the injuries sustained during his military deployment in the Horn of Africa.  This injury was likely exacerbated by the District's failure and refusal to provide Lindewirth light duty upon his return from his military deployment,

41.     Defendants attempted to force Lindewirth to take Family Medical Leave for this surgery, even though he had informed the District that he would be under military orders for his surgeries, and therefore, forcing him to take Family Medical Leave would violate USERRA.

42.     When Lindewirth attempted to address yet another USERRA violation through the Department, the District initially told the Department that Lindewirth was not under orders for his surgeries because he was no longer in the military.  As a result of the

misinformation the District provided to the Department, the Department initially told Lindewirth that he would have to take Family Medical Leave for his surgeries.

43.     It was only after Lindewirth provided the Department with correct information (that he was still with the Navy Reserves and had military orders for his surgeries) that the District was told that Lindewirth would not have to use Family Medical Leave.

44.     At the time the District took the position that Lindewirth would need to take Family Medical Leave for his arm surgeries, it was anticipated that Lindewirth would require more than twelve (12) weeks to recover from those surgeries. Had Lindewirth been required to take Family Medical Leave as the District tried to insist, it could have fired him when he was unable to return to duty after the exhaustion of Family Medical Leave.

45.     On or about March 5, 2014, Lindewirth filed a complaint with the Department, alleging discrimination on the basis of his prior military service when he was denied the promotion to Transfer Supervisor.

46.     The District was provided with notice of Lindewirth's complaint on or about March 6, 2014.

47.     Before Lindewirth's first arm surgery was scheduled in March 2014, he had accepted trade dates from other employees of the District, believing he would be available to work those dates.  When he learned that he would be out on orders due to his first scheduled surgery and then on leave to recover from it, and therefore, could not cover the shifts, he was initially told that he would need to find someone to work the shifts for him or use sick time.  Because Lindewirth's surgery put him in an active duty

status under orders from the military and then a recovery status, the District was required

to cover these shifts, not Lindewirth, another attempted USERRA violation.

48.     After Lindewirth recovered from the first arm surgery in late March 2014,

the District once again refused to permit him to return light duty, even though it had light

duty available for other employees of the District.  As a result, he was required to go on

incapacitation pay, resulting in less pay to Lindewirth.

49.     On or about May 8, 2014, Lindewirth applied for three (3) open supervisor

positions within the District.  These positions are promotions.

50.     Lindewirth was more qualified than the three (3) candidates selected for

the three supervisor positions, who did not have previous military deployments while

employed by the District, and who had not previously complained about discrimination

under USERRA, and were not disabled and/or perceived as disabled.

51.     As with the 2013 Transfer Supervisor promotion, Lindewirth was not

selected for promotion to any of the open supervisor positions, even though he was more

qualified for these positions.  Lindewirth was notified that he was not moving on to the

next round of interviews for this promotion (denied promotion) on or about May 9, 2014.

52.     As a direct and proximate result of the discrimination and retaliation

alleged herein, Lindewirth has sustained and will continue to sustain lost wages and other

benefits of employment (e.g. pension, health insurance, additional education allowances

and vacation days).

53.     As a direct and proximate result of the discrimination and retaliation

alleged herein, Lindewirth has suffered and will continue to suffer emotional pain and

suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment

of life, stress and loss of professional reputation.

## COUNT I
## DISCRIMINATION 2013 PROMOTION

For Count I of Plaintiff's cause of action against Defendants District and its current Board, Fenton, Ottomeyer, Davis, Perry, Guerra, Sommerville, and Meyer, Plaintiff states as follows:

54.     Plaintiff incorporates by reference as if fully set forth herein all preceding paragraphs of his Complaint.

55.     Lindewirth is a protected individual under USERRA and corresponding state law as a result of his past, present, and future military service.  More specifically, he was protected in 2013 when he was denied the promotion to Transfer Supervisor because of his military deployment to the Horn of Africa.

56.     Lindewirth suffered an adverse employment action when the Defendants named herein denied him promotion to the position of Transfer Supervisor because of his prior military service/deployment.

57.     There was a casual connection between Lindewirth's protected status under USERRA and corresponding state law and the Defendants denying him the promotion to the position of Transfer Supervisor in that his recent deployment was a motivating factor in the Defendants' decision to deny him the promotion.

58.     As a direct and proximate result of the discrimination alleged herein, Lindewirth has sustained and will continue to sustain lost wages and benefits of employment (e.g. pension, additional education allowances and vacation days).

59.     As a direct and proximate result of the discrimination alleged herein, Lindewirth has suffered and will continue to suffer emotional pain and suffering, mental

anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation.

60.     The conduct of Defendants as set forth herein constitutes a willful violation of USERRA and corresponding state law entitling Lindewirth to an award of liquidated and/or punitive damages.

WHEREFORE, Plaintiff Lindewirth prays this Court to enter judgment in his favor and against Defendants District and its current Board, Fenton, Ottomeyer, Davis, Perry, Guerra, Sommerville, and Meyer and thereafter:

A.     Order the Defendants named herein to comply with USERRA and corresponding state law by promoting him to the Transfer Supervisor position.

B.     Order these Defendants to make Plaintiff whole for any and all loses or damages he has suffered and will continue to suffer including lost wages and other benefits of employment, as well as prejudgment interest;

C.     Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation;

D.     Award Plaintiff liquidated and/or punitive damages against the Defendants for their willful violation of USERRA and corresponding state law;

E.     Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

F.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

**COUNT II**
**DISCRIMINATION 2014 PROMOTION**

For Count II of Plaintiff's cause of action against Defendants District and its current Board, Fenton, Ottomeyer, Bauer, Klein, Reguly, Davis, and Meyer, Plaintiff states as follows:

61.     Plaintiff incorporates by reference as if fully set forth herein all preceding paragraphs of his Complaint.

62.     Lindewirth is a protected individual under USERRA and corresponding state law as a result of his past, present, and future military service.  More specifically, he was protected in 2014 when he was denied the promotion to supervisor because he was under military orders for the surgeries made necessary by his 2011 to 2013 deployment when he applied for this promotion, as well as his previous military service.

63.     Lindewirth suffered an adverse employment action when the Defendants named herein denied him promotion to the position of supervisor because of his military service.

64.     There was a casual connection between Lindewirth's protected status under USERRA and corresponding state law and the Defendants' denying him the promotion to the position of supervisor in that his current or previous military orders were a motivating factor in the Defendants' decision.

65.     As a direct and proximate result of the discrimination alleged herein, Lindewirth has sustained and will continue to sustain lost wages and benefits of employment (e.g. pension, additional education allowances and vacation days).

66.     As a direct and proximate result of the discrimination alleged herein, Lindewirth has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and

loss of professional reputation.

67.     The conduct of Defendants as set forth herein constitutes a willful violation of USERRA and corresponding state law entitling Lindewirth to an award of liquidated and/or punitive damages.

WHEREFORE, Plaintiff Lindewirth prays this Court to enter judgment in his favor and against Defendants District and its current Board, Fenton, Ottomeyer, Bauer, Klein, Reguly, Davis, and Meyer and thereafter:

A.      Order the Defendants named herein to comply with USERRA and corresponding state law by promoting him to a supervisor position.

B.      Order these Defendants to make Plaintiff whole for any and all loses or damages he has suffered and will continue to suffer including lost wages and other benefits of employment, as well as prejudgment interest;

C.      Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation;

D.      Award Plaintiff liquidated and/or punitive damages against  Defendants for their willful violation of USERRA and corresponding state law;

E.      Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

F.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT III
## RETALIATION 2013 AND 2014 PROMOTIONS

For Count III of Plaintiff's cause of action against all Defendants, Plaintiff states

17

as follows:

68.     Plaintiff incorporates by reference as if fully set forth herein all preceding paragraphs of his Complaint.

69.     Lindewirth engaged in protected activity under USERRA and corresponding state law when he complained about the District's USERRA violations and further when on March 5, 2014 he filed a complaint that he was discriminated against under USERRA when denied the Transfer Supervisor promotion, action taken to enforce a protection afforded to him under USERRA.  More specifically, he also engaged in protected activity when he took the actions alleged in paragraphs 15, 21, 22, 26, 28, 29, 41-43, and 45 above.

70.     Lindewirth suffered adverse employment actions when the Defendants denied him promotions to the position of Transfer Supervisor in 2013 and one of the open supervisor positions in 2014 because of his protected activity under USERRA as set forth herein.

71.     There was a casual connection between Lindewirth's protected activity under USERRA and the Defendants' denying him the promotions to the position of Transfer Supervisor and supervisor in that Lindewirth's protected activity was a motivating factor in the Defendants' decision.

72.     As a direct and proximate result of the retaliation alleged herein, Lindewirth has sustained and will continue to sustain lost wages and benefits of employment (e.g. pension, additional education allowances and vacation days).

73.     As a direct and proximate result of the retaliation  alleged herein, Lindewirth has suffered and will continue to suffer emotional pain and suffering, mental

anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation.

74.     The conduct of Defendants as set forth herein constitutes willful violations of USERRA, entitling Lindewirth to an award liquidated and/or punitive damages.

WHEREFORE, Plaintiff Lindewirth prays this Court to enter judgment in his favor and against all Defendants and thereafter:

A.     Order the Defendants to comply with USERRA by promoting him to a supervisor position.

B.     Order these Defendants to make Plaintiff whole for any and all loses or damages he has suffered and will continue to suffer including lost wages and other benefits of employment, as well as prejudgment interest;

C.     Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation;

D.     Award Plaintiff liquidated and/or punitive damages against  Defendants for their willful violations of USERRA;

E.     Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

F.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

**COUNT IV**
**USERRA DISCRIMINATION/RETALIATION DENIAL OF LIGHT DUTY**

For Count IV of Plaintiff's cause of action against all Defendants, Plaintiff states

as follows:

75.     Plaintiff incorporates by reference as if fully set forth herein all preceding paragraphs of his Complaint.

76.     As set forth above, Lindewirth is a protected individual under USERRA and corresponding state law as a result of his past, present, and future military service and more specifically his Horn of Africa deployment that resulted in a line of duty injury to him, which further required surgery under military orders.

77.     Lindewirth was denied light duty work available in the District by Defendants both in January 2013 when he returned from his deployment and in March 2014 (and thereafter) after his first surgery.  Upon information and belief, the denial of light duty in January 2013, requiring Lindewirth to return to full duty despite his injuries, exacerbated his arm injuries, increasing his physical pain and suffering and/or medical bills and expenses.  The denial of light duty in March 2014 also required Lindewirth to go on incapacitation pay status, resulting in less pay to him because no longer paid drill pay.

78.     There was a causal connection between Lindewirth's protected status under USERRA and the Defendants' denying him light duty status in January 2013 and March 2014 (and thereafter), in that Lindewirth's deployment, military injury, and required medical care were motivating factors in the Defendants' decisions.

79.     Additionally, but without waiver of the foregoing, Lindewirth engaged in protected activity under USERRA as set forth in paragraphs 15, 21, 22, 26, 28, 29, 41-43, and/or 45 above, all actions taken to enforce a protection afforded to him under USERRA when the Defendants denied him light duty.

20

80.     Lindewirth suffered an adverse employment action when the Defendants denied him light duty in January 2013 and March 2014 (and thereafter) because of his protected activity under USERRA.

81.     There was a causal connection between Lindewirth's protected activities under USERRA and the Defendants' denying him light duty status in January 2013, March 2014, and thereafter.

82.     As a direct and proximate result of the discrimination and/or retaliation alleged herein, Lindewirth has sustained and will continue to sustain lost wages (drill pay).

83.     As a direct and proximate result of the discrimination and/or retaliation alleged herein, Lindewirth has suffered and will continue to suffer physical pain and suffering and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress, as well as needing additional medical care and treatment.

84.     The conduct of Defendants as set forth herein constitutes willful violations of USERRA and corresponding state law entitling Lindewirth to an award of liquidated and/or punitive damages.

WHEREFORE, Plaintiff Lindewirth prays this Court to enter judgment in his favor and against all Defendants and thereafter:

A.     Order these Defendants to make Plaintiff whole for any and all loses or damages he has suffered and will suffer including but not limited to  lost wages and prejudgment interest;

B.     Award damages to Plaintiff for his physical and emotional pain and

21

suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress, as well as any increased medical expenses;

C.     Award Plaintiff liquidated and/or punitive damages against  Defendants for their willful violation of USERRA and corresponding state law;

D.     Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT V
## DISCRIMINATION/RETALIATON PAY DIFFERENTIAL

For Count V of Plaintiff's cause of action against Defendants District and its current Board, Fenton, Ottomeyer, Davis, Perry, Guerra, Sommerville, Bauer, Klein, and Reguly, Plaintiff states as follows:

85.     Plaintiff incorporates by reference as if fully set forth herein all preceding paragraphs of his Complaint.

86.     Lindewirth is a protected individual under USERRA and corresponding state law as a result of his past, present, and future military service.  More specifically, he was protected in 2005 to 2006 and 2011 to 2013 when he was on active duty orders and/or deployed for extended periods of time.

87.     Lindewirth suffered adverse employment actions in 2005/2006 and 2011/2013 when the Defendants named herein denied him the pay differential provided to other employees of the District on military and/or nonmilitary leave.

88.     There was a casual connection between Lindewirth's protected status under USERRA and corresponding state law and the Defendants' denying him the pay

differential while deployed or on extended active duty orders in that Lindewirth's military status was a motivating factor in the Defendants' decision.

89.     Alternatively but without waiver of the foregoing, Lindewirth engaged in protected activity under USERRA as set forth in paragraphs 15, 21, 22, 23, 28, and 29, above, all actions taken to enforce a protection afforded to him under USERRA.

90.     Lindewirth suffered adverse employment actions when the Defendants denied him the pay differential in 2005/2006 and 2011/2013 afforded to others on extended leaves of absence because of his protected activity under USERRA.

91.     There was a causal connection between Lindewirth's protected activity under USERRA and corresponding state law and the Defendants' denying him the difference between his military pay and District pay while on extended active duty orders/deployment in 2005/2006 and 2011/2013.

92.     As a direct and proximate result of the discrimination and/or retaliation alleged herein, Lindewirth has sustained lost wages and other benefits of employment (e.g. pension and healthcare).

93.     As a direct and proximate result of the discrimination and/or retaliation alleged herein, Lindewirth has suffered and will continue to suffer emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

94.     The conduct of Defendants as set forth herein constitutes a willful violation of USERRA and corresponding state law entitling Lindewirth to an award of liquidated and/or punitive damages.

WHEREFORE, Plaintiff Lindewirth prays this Court to enter judgment in his

favor and against Defendants District and its current Board, Fenton, Ottomeyer, Davis, Perry, Guerra, Sommerville, Bauer, Klein, and Reguly, and thereafter:

    A.    Order these Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment, together with prejudgment interest;

    B.    Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress;

    C.    Award Plaintiff liquidated and/or punitive damages against  Defendants for their willful violations of USERRA and corresponding state law;

    D.    Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

    E.    Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

**COUNT VI**
**DISCRIMINATION IN VIOLATION OF THE**
**MISSOURI HUMAN RIGHTS ACT**

For Count VI of Plaintiff's cause of action against all Defendants, Plaintiff states as follows:

95.    Plaintiff incorporates by reference as if fully set forth herein all preceding paragraphs of his Complaint.

96.    On October 31, 2014, Lindewirth filed a Charge of Discrimination with the EEOC and Missouri Human Rights Commission (hereinafter "MHRC") against the Defendants alleging a continuing course of disability discrimination.

24

97.     The MHRC issued a right to sue letter on November 24, 2014.

98.     Plaintiff preserves the right to file the claims set forth herein under the Americans with Disabilities Act when a right to sue letter is issued by the EEOC.

99.     Lindewirth suffered military service related injuries to both arms while deployed in the Horn of Africa before returning to work with the District in December 2012/January 2013.

100.    Lindewirth's arm injuries were a disability within the meaning of the Missouri Human Rights Act, § 213.055 R.S.Mo., in that his injuries constitute a physical impairment that substantially limit him in one or more major life activity.  Specifically, Lindewirth's disability substantially limits his ability to perform manual tasks, work, lift, and reach.

101.    Alternatively, but without waiver of the foregoing, Defendants regarded Lindewirth's arm injuries as a physical impairment that limited one or more major life activities.

102.    Defendants knew about Lindewirth's disability or perceived him as disabled as a result of his military service related injury at the time of the acts alleged herein.

103.    Lindewirth was qualified to perform the essential functions of the job of Transfer Supervisor and/or Supervisor when he was denied promotions in 2013 and 2014 and/or could have performed these jobs with reasonable accommodation from the Defendants.

104.    Lindewirth suffered an adverse employment action when he was denied the Transfer Supervisor position in 2013 and one of the open Supervisor positions in

2014 because of his disability or because regarded as disabled by Defendants, which was a motivating and/or contributing factor in the decision to deny Lindewirth the promotions for which he applied.

105.   Additionally but without waiver of the foregoing, Defendants Fenton, Ottomeyer, Davis, Perry Guerra, and Meyer on behalf of the District engaged in a continuing course of conduct of denying Lindewirth unlimited light duty when he returned to the District in December 2012/January 2013 through March 2014.  Upon information and belief, this conduct, which required Lindewirth to return to full duty despite his injuries, exacerbated Lindewirth's arm injuries, increasing his physical pain and suffering and/or requiring him to need additional medical care and treatment.

106.   In March 2014, Lindewirth again requested reasonable accommodation for his disability by requesting light duty after his first arm surgery, which request was denied by Defendants Fenton, Ottomeyer, Bauer, Klein, Reguly, Davis, and Meyer on behalf of the District, and is still being denied by the District and Board as of the filing of this Complaint.

107.   Defendants did not make a good faith effort to assist Lindewirth in seeking accommodation, particularly when it provided light duty accommodations to other injured employees.

108.   Lindewirth could have been reasonably accommodated through light duty after his return to the District in December 2012/January 2013 and at any time after each of his arm surgeries but for Defendants' lack of good faith in accommodating him.

109.   The actions, policies and practices complained of herein were in violation of Plaintiffs' rights secured by R.S.Mo. §213.010 *et seq.*

110.     As a direct and proximate result of the discrimination alleged herein, Lindewirth has sustained and will continue to sustain lost wages and benefits of employment (e.g. pension, additional education allowances and vacation days).

111.     As a direct and proximate result of the discrimination alleged herein, Lindewirth has suffered and will continue to suffer physical pain and suffering and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation, as well as needing additional medical care and treatment.

112.     The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Lindewirth's statutory rights, was outrageous, and/or was intentionally committed without just cause or excuse, justifying an award of punitive damages against them so as to punish them and to deter them and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff Lindewirth prays this Court to enter judgment in his favor and against all Defendants and thereafter:

A.     Order the Defendants named herein to comply with the MHRA by promoting him to the Transfer Supervisor or supervisor position to which he was denied promotion;

B.     Order the Defendants to make Plaintiff whole for any and all loses or damages he has suffered and will continue to suffer including lost wages and other benefits of employment, as well as prejudgment interest;

C.     Award damages to Plaintiff for his physical and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment

of life, stress and loss of professional reputation, as well as any increased medical

expenses;

      D.     Award Plaintiff liquidated and/or punitive damages against  Defendants

for their violation of the ADA/MHRA;

      E.     Award Plaintiff the costs of this action, together with his reasonable

attorneys' fees; and

      F.     Grant such other and additional relief as may appear to the Court to be

equitable and just under the circumstances.

**COUNT VII**
**42 U.S.C. SECTION 1983 CLAIM AGAINST ALL DEFENDANTS**

      For Count VII of Plaintiff's cause of action against all Defendants, Plaintiff states

as follows:

      113.     Plaintiff incorporates by reference as if fully set forth herein all preceding

paragraphs of his Complaint.

      114.     Defendants, acting under color of state law, deliberately acted against

Plaintiff as set forth above because of his military service, causing him to be deprived of

his rights guaranteed by the Constitution and laws of the United States.

      115.     The actions, policies and practices complained of herein, made by those

with final policymaking authority, were in violation of 42 U.S.C. §1983 in that they have

denied Plaintiff of his rights secured by USERRA, the ADA, as well as equal protection

of the law secured by the Fourteenth Amendment to the United States Constitution.

      116.     The actions complained of herein were made by those with final policy-

making authority and/or approved by those with final policy-making authority within the

District as part of a deliberate policy of discrimination against Plaintiff and thereafter to

28

retaliate against Plaintiff when he complained of this illegal discrimination.

117.    As a direct and proximate result of the discrimination alleged herein, Lindewirth has sustained and will continue to sustain lost wages and benefits of employment (e.g. pension, additional education allowances and vacation days).

118.    As a direct and proximate result of the discrimination alleged herein, Lindewirth has suffered and will continue to suffer physical pain and suffering and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation, as well as needing additional medical care and treatment.

119.    The conduct of Defendants as set forth herein acting under color of state was willful, deliberate, malicious, and done with gross and reckless indifference to the federally protected rights of Plaintiff, entitling him to an award of liquidated and/or punitive damages.

WHEREFORE, Plaintiff Lindewirth prays this Court to enter judgment in his favor and against all Defendants and thereafter:

A.    Order these Defendants to make Plaintiff whole for any and all loses or damages he has suffered and will continue to suffer including lost wages and other benefits of employment, as well as prejudgment interest;

B.    Award damages to Plaintiff for his physical and emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of professional reputation, as well as any increased medical expenses;

C.    Award Plaintiff liquidated and/or punitive damages against the Defendants

named herein in their individual capacities;

D.     Award Plaintiff the costs of this action, together with his reasonable

attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be

equitable and just under the circumstances.

Respectfully submitted,

**PLEBAN & PETRUSKA LAW, LLC**


by:     /s/ Lynette M. Petruska
C. John Pleban MO24190
cpleban@plebanlaw.com
Lynette M. Petruska, MO41212
lpetruska@plebanlaw.com
2010 S. Big Bend Blvd.
St. Louis, MO  63117
Telephone:  314-645-6666
Facsimile:   314-645-7376

Attorneys for Plaintiff